IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| INDU PATEL | : |
| | : CIVIL ACTION |
| v. | : |
| | : NO. 14-2271 |
| CARLOS TEPOX-VASQUEZ | : |

**MEMORANDUM**

**SURRICK, J.**                                                                                                                **AUGUST  3 , 2015**

Presently before the Court is the Defendant's Motion *in Limine* to Preclude Plaintiff from Recovering Excess Medical Expenses (ECF No. 24). For the following reasons, Defendant's Motion will be granted.

**I.      BACKGROUND**

This is an action for personal injury arising from a motor vehicle accident. Defendant moves *in limine* to preclude Plaintiff from recovering excess medical bills at trial, pursuant to the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa. Con. Stat. Ann. § 1701 *et seq*. Defendant argues that Plaintiff has failed to establish that her alleged unpaid excess medical bills are not "paid or payable" by her own primary insurance.

**A.      Factual Background**

On February 27, 2014, Plaintiff was operating a motor vehicle traveling eastbound on County Line Road near the intersection of U.S. Route 202 in Lansdale, Pennsylvania. (Compl. ¶ 5, ECF No. 1.) At that same time, Defendant was operating a motor vehicle in Plaintiff's vicinity, traveling westbound along County Line Road. (*Id*. ¶ 6.) Defendant attempted to make a left turn, and in the process struck Plaintiff's vehicle. (*Id*. ¶¶ 7-8.) Plaintiff alleges that she sustained injuries as a result of that motor vehicle accident. (*Id*. ¶ 10.)

At the time of the accident, Plaintiff was covered by an automobile insurance policy issued by Erie Insurance Group. (Def.'s Mot. ¶ 2; Pl.'s Resp. ¶ 2, ECF No. 38.) She also had a policy of private health insurance issued by Keystone Health Plan East ("Keystone"). (Def.'s Mot. ¶ 2; Pl.'s Resp. ¶ 2.) Plaintiff received medical treatment from various providers, and the Erie policy provided the first-party medical coverage.[1] (Def.'s Mot. ¶ 2; Pl.'s Resp. ¶ 2.) The first-party medical coverage was exhausted, and Plaintiff claims that the sum of $12,771 remains due and owing, on the outstanding excess medical bills. (Pl.'s Pre-Trial Mem. 4, ECF No. 32.)

B. **Procedural Background**

Plaintiff began this action by filing a Complaint on April 18, 2014. Jurisdiction was asserted under 28 U.S.C. § 1332(a).[2] The case was marked as eligible for arbitration. After requesting alternate service of process, Plaintiff effected service of the Complaint on September 2, 2014. (Aff. of Service, ECF No. 6.) An arbitration trial was scheduled for March 20, 2015. (Notice of Hearing, ECF No. 14.) The arbitration panel found in favor of Plaintiff, and against Defendant, and awarded the sum of $6,000. (Arbitration Award, ECF No. 17; *see also* Pl.'s Notice of Appeal Ex. "A," ECF No. 18.) On March 24, 2015, Plaintiff filed a Notice of Appeal from the arbitration award and requested a trial *de novo*. (Pl.'s Notice of Appeal.)

Trial was scheduled for April 20, 2015. (Scheduling Ord., ECF No. 19.) On April 6, 2015, Defendant filed the instant Motion. Plaintiff filed a Response in opposition on April 14, 2015. On April 9, 2015, Defendant filed a second Motion *in Limine*, seeking to preclude Plaintiff's expert, Bruce Grossinger, D.O., from testifying at trial on the basis of prejudice

---

[1] Pursuant to § 1711(a), a person is required to carry a minimum of $5,000 in first-party medical benefits coverage.

[2] Plaintiff is a resident of the Commonwealth of Pennsylvania, and Defendant is a resident of the State of New Jersey. (Compl. ¶¶ 1-2.)

caused by an entirely new expert report served on the eve of trial. (ECF No. 31.) Finding merit in that Motion, we continued the trial to permit Defendant to cure the prejudice by re-deposing Dr. Grossinger. Trial is now scheduled to begin on October 26, 2015. (Am. Scheduling Ord., ECF No. 45.)

## II. DISCUSSION

This case concerns the proof necessary under the MVFRL for a plaintiff to establish a claim for excess unpaid medical bills. Defendant moves to preclude Plaintiff from pursuing such a claim, contending that Plaintiff has failed to establish that the bills are not "paid or payable." He argues that, since Plaintiff has a private health insurance policy through Keystone, Plaintiff's excess medical bills are "capable of being paid." Defendant argues that the bills should therefore be excluded from recovery under § 1722 of the MVFRL.

Plaintiff responds that the excess medical bills are not "capable of being paid," because the treatment providers whose bills remain outstanding do not participate in her private health insurance network. In support of her argument, Plaintiff attaches to her Response three letters, each dated April 14, 2015 (the date she filed her Response) and addressed to her attorney. (Pl.'s Resp. Ex. "A.") Those letters were sent by Advantage 2K Medical Billing Company, on behalf of Dr. Michelle Y. Holding, and the billing managers for Tri County Pain Management Center and Grossinger Neuropain Specialists. (*Id.*) Each letter represents that the respective treatment provider does not participate in Plaintiff's private plan through Keystone.

The MVFRL precludes a plaintiff from recovering any excess unpaid medical bills that are "paid or payable" by a plaintiff's private insurance. Specifically, § 1722 (titled "Preclusion of recovering required benefits") provides:

> In any action for damages against a tortfeasor . . . arising out of the maintenance
> or use of a motor vehicle, a person who is eligible to receive benefits under the

3

coverages set forth in this subchapter, or workers' compensation, or any program, group contract or other arrangement for benefits as defined in section 1719 (relating to coordination of benefits) shall be precluded from recovering the amount of benefits paid or payable under this subchapter, or workers' compensation, or any program, group contract or other arrangement for payment of benefits as defined in section 1719.

75 Pa. Con. Stat. Ann. § 1722.  "Section 1722 reflects the [Pennsylvania] Legislature's intent to shift a substantial share of the liability for injuries caused by uninsured and underinsured motorists from automobile insurance carriers to collateral source providers (many of which previously held subrogation interests), obviously with the aim to reduce motor vehicle insurance premiums." *Tannenbaum v. Nationwide Ins. Co.*, 992 A.2d 859, 603 (Pa. 2010).

Neither party here disputes the fact that the excess medical bills have not been paid. Moreover, no party disputes the fact that Plaintiff's private health plan through Keystone falls within the scope of § 1719, as required by § 1722.  Therefore, our inquiry is limited to whether the excess bills are "payable."

Pennsylvania courts define the term "payable" used in § 1722 as "capable of being paid." *Scott v. Erie Ins. Grp.*, 706 A.2d 357, 359 (Pa. Super. Ct. 1998) (citation omitted); *see also* BLACK'S LAW DICTIONARY 1243 (10th ed. 2014) (defining "payable" as "(Of a sum of money or a negotiable instrument) that is to be paid.  An amount may be payable without being due.").  As one Pennsylvania trial court has observed:

> [W]hen determining whether a benefit is capable of being paid, the focus is on the current status of the claim.  The question is, 'At the present point in time, is or will the insurer provide coverage for the benefit to the insured?'  If the insurer has denied coverage, then the answer to that question is no and the benefit cannot be considered payable.

*Eberhart v. Zemko*, No. 03-01, 2004 WL 5868018 (Pa. Ct. Com. Pl. Lycoming Cnt'y June 15, 2004) (order denying motion *in limine*).

Neither the MVFRL nor the Pennsylvania courts interpreting its provisions expressly

4

require a plaintiff to establish that claimed excess medical bills do not fall under the preclusive nature of § 1722.  Nevertheless, it is "[t]he general rule in this Commonwealth [] that the plaintiff bears the burden of proof as to damages." *Judge Technical Servs., Inc. v. Clancy*, 813 A.2d 879, 885 (Pa. Super. Ct. 2002).  In other words, a plaintiff claiming any element of damages bears the burden of establishing her legal entitlement to them.  Section 1722 precludes a plaintiff from asserting a claim for specific damages.  Therefore, to establish her claim for excess medical bills, a plaintiff bears the burden of establishing that her claim is not precluded by § 1722.  *See Grant v. Baggott*, 36 Pa. D. & C.4th 298, 310 (Pa. Ct. Com. Pl. Del. Cnt'y 1997), *aff'd*, 723 A.2d 240 (Pa. Super. Ct. 1998), *appeal denied*, 734 A.2d 394 (Pa. 1998) (placing the burden upon the plaintiff to establish that her claimed excess medical bills are not precluded by § 1722).  This statutory provision was the product of the Pennsylvania General Assembly reconciling "the very difficult policy questions" of preventing a double recovery and reducing automobile insurance premiums.  *Tannenbaum*, 992 A.2d at 867-68.  Placing the burden upon a plaintiff to establish that her claimed excess medical bills are not precluded under § 1722 furthers that policy goal.  *Id*. at 868 ("[I]t is the Legislature's chief function to set public policy and the courts' role to enforce that policy, subject to constitutional limitations." (quoting *Program Admin. Servs., Inc. v. Dauphin Cnt'y Gen. Auth.*, 928 A.2d 1013, 1017-18 (Pa. 2007))); *see also Pittsburgh Neurosurgery Assocs., Inc. v. Danner*, 733 A.2d 1279, 1282 (Pa. Super. Ct. 1999) ("This legislative concern for the increasing cost of insurance is the public policy that is to be advanced by statutory interpretation of the MVFRL."); 1 Pa. Con. Stat. Ann. § 1921(a).

With regard to a plaintiff meeting her burden under § 1722, courts find excess medical bills to fall outside the scope of § 1722 when they have been submitted to an insurance carrier and rejected.  For example, in *Scott*, the Superior Court of Pennsylvania found excess medical

bills were not "payable" because the plaintiff submitted them to his insurance carrier and the carrier refused payment. 706 A.2d at 358-59. Several Pennsylvania Courts of Common Pleas have followed the same approach. *See Eberhart*, 2004 WL 5868018 ("In conclusion, the income loss benefit cannot be considered payable since St. Paul's denied coverage. As such, § 1722 does not preclude Eberhart's income loss claim."); *Grant*, 36 Pa. D. & C.4th at 310 (holding plaintiff failed to establish excess medical bills were not "payable" because there was no evidence that his insurance carrier denied coverage for them). Plaintiff's own arguments are consistent with these decisions:

> Where a [p]laintiff exhausts all first party benefits under [her first party medical benefits] coverage, *submits excess medical bills to any private health insurance, and has those bills rejected*, those bills become 'unpaid and not payable' under the MVFRL. Thus, all bills rejected by such providers are then admissible pursuant to [§ 1722].

(Pl.'s Resp. Mem. of Law 3, ECF No. 38 (emphasis added).)

Turning to the evidence proffered by Plaintiff, she provides only letters from the billing managers of her treatment providers indicating that each respective provider does not participate in Plaintiff's health plan network. There is nothing in these letters indicating that a claim for benefits was submitted to Keystone. There is also nothing in the letters (or Plaintiff's Response) that Keystone would not accept a claim for payment merely because Plaintiff submitted the claim herself. And there is nothing in the letters to suggest that Keystone actually rejected any claim for coverage.

A bald assertion that excess medical bills are not "payable" does not establish that they are not "payable." Furthermore, assertions by a plaintiff's treatment provider, that he or she does not participate in a certain health insurance plan, does not by itself establish that the excess medical bills are not "payable." The determination of whether the excess medical bills are

"payable" must be made by Plaintiff's health insurer, Keystone.  If Keystone accepts a claim for payment, the bills are obviously "payable"; and if Keystone rejects the claim, the bills are "not payable."  Indeed, this is the very standard advocated by Plaintiff herself (*see* Pl.'s Resp. Mem. of Law 3)—a standard which she fails to meet.

In responding to Defendant's Motion, Plaintiff focused her effort on obtaining letters from her treatment providers' billing managers.  That effort would have been better spent submitting the bills to Keystone and having Keystone either accept or reject the bills.  It is Plaintiff's burden to establish that her claimed excess medical bills are not precluded by § 1722.  On the record before this Court, consisting only of the letters from certain billing managers, Plaintiff has failed to meet that burden.

Because Plaintiff has failed to establish that her claimed excess medical bills are not precluded by § 1722, she may not present this claim to a jury.[3]  Defendant's Motion *in limine* will therefore be granted.

---

[3] We held oral argument on this Motion on April 15, 2015.  (Minute Entry, ECF No. 41.) At that time, Plaintiff was apprised that there may be an issue with respect to the insufficient nature of the evidence she presented to establish that her excess medical bills are not "payable." Since that time, Plaintiff has offered nothing by way of supplemental submission showing that a claim for benefits was made to Keystone and the claim was rejected by Keystone.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion *in Limine* will be granted. Plaintiff will be precluded from presenting a claim for excess medical benefits at trial.

An appropriate Order follows.

BY THE COURT:

_____
R. BARCLAY SURRICK, J.